# Ingraham *v.* Phillips.

1803.

In the Court below,

GEORGE PHILLIPS, THOMPSON PHILLIPS, ICHABOD WETMORE, and RICHARD ALSOP, *Plaintiffs;* NATHANIEL G. INGRAHAM, *Defendant.*

ACTION of book debt, by writ of attachment, served upon the real and personal estate of the defendant, in September, 1794.

At the December Term of the Superior Court, in Middlesex County, in 1801, a certificate under the bankrupt law of the United States, regularly obtained in New-York, on the 11th of August, 1801, was pleaded in bar. The commission issued on the 16th of February, 1801, and the act of bankruptcy was found, by the commissioners, to have been committed on the 20th of January preceding.

To this plea there was a replication, reciting the 63d section of the bankrupt law, in these words, " *And be it* "*further enacted,* that nothing contained in this act shall " be taken or construed to invalidate or impair any lien, " existing at the date of this act, upon the lands and " chattels of any person, who may become a bankrupt;" and averring, that before the date of said act, the plaintiffs commenced their action, and attached various articles of personal property, and sundry pieces of land, belonging to the defendant, which had ever since been holden to satisfy the judgment.

To this replication there was a demurrer.

The Court adjudged the replication sufficient, and

*An attachment, under the attachment law of this State, creates a lien upon the property attached, within the meaning of the 63d section of the bankrupt act.*

*Where a suit is commenced by attaching the property of the defendant, and the defendant afterwards commits an act of bankruptcy, and regularly obtains a certificate, and pleads the same in bar of said suit, judgment will be rendered against the defendant, but execution will issue against the property attached only.*

1803.

INGRAHAM
v.
PHILLIPS.

gave judgment for the plaintiffs to the amount of their debt, but ordered execution to issue against the property attached only.

The defendant brought a writ of error, assigning for cause the general error.

*Daggett* and *Hosmer*, for the plaintiff in error.

The judgment of the Court below proceeded on the ground, that the attachment of *Ingraham's* property constituted a *lien* within the construction of the act. The plaintiff in error contends, that this construction is unwarranted ; that the word *lien* has not been applied to *attachment*, by law writers ; and that this, from a survey and comparison of the various parts of the bankrupt law, could not be the meaning of the national legislature.

In that bankrupt law, of which ours is nearly a transcript, and, undoubtedly, *to be in like manner expounded*, the word *lien* has long been *definitely* applied. It has ever been construed to extend to cases of contract, *express*, or *implied* ; (a) to mortgages and pledges, which, by express contract, constitute a lien, or *jus in re, et ad rem* ; to the rights of factors, packers, dyers, policy brokers, innkeepers, &c. in whose favour a contract is implied. These are the liens, that have been recognized under the English bankrupt law. And not an instance of a lien can be found, but the person claiming to have it, has the *possession*, and a *right of property*, in the thing. Hence, a lien, in its unvarying legal use, has been considered as implying the *possession*, and a *right* of possession.

(a) *Cooper* 278.   *Cullen* 207, 210.   1 *Cook* 454.

But an attachment gives the creditor neither posses- 1803.

INGRAHAM
v.
PHILLIPS.
sion, nor the right of possession. He has, in a certain
event, *a priority*. The effect, then, of an attachment is
not a lien, but a priority.

The word lien, being contained in a national law, must
receive an uniform construction throughout the United
States. But, in many of the States, attachments are un-
known. There the word lien must mean something else,
or be without a meaning.

Strange it is, that the law should make particular pro-
vision, relative to attachments, in the 31st section; and
that, for a *proviso*, we are to look at the 63d section!

Again, it is very extraordinary, that if attachments
are liens, no legal method has been designated, to render
them efficacious.

The 31st section, relative to attachments, is very un-
equivocal. It provides for the distribution of the bank-
rupt's effects, that there shall be a proportionable pay-
ment, regarding the amount of each debt; so that eve-
ry creditor, having security for his debt, by *judgment*,
*statute*, *recognizance*, or *specialty*, or having an *attach-
ment* under any of the laws of the individual States, or
of the United States, on the estate of the bankrupt, (pro-
vided there be no execution executed) shall not be reliev-
ed upon any such judgment, statute, recognizance, spe-
cialty, or attachment, " for more than a *rateable* part of
his debt with the other creditors of the bankrupt." It
is here to be remarked, that attachments are put on a foot-
ing with judgments, statutes, recognizances, and spe-
cialties. By the laws of many, probably of most of the
States, a judgment gives *a priority*. A statute has the

same effect. The creditor by a recognizance, or specialty, has a right to full payment before the simple contract creditor. If the right of one is presumed, so it is of all. Then, in New-York, the judgment and specialty creditor may sweep away the whole estate of the bankrupt. No person ever indulged so absurd an idea. It has never been pretended, that the specialty creditor, or the creditor on statute or recognizance, had the right to hold exclusively of others.

It is also to be remarked, that the words are unrestrained; they look backwards as well as forwards. They relate to the very *date* of the act, and, of course, to the previous *liens :* " That every creditor having security," &c. " shall not be *relieved*," *i. e.* have legal remedy, " for more than a proportionable part."

Further, the construction, which is opposed to the lien of an attachment, is the more probable, because *this* lien is far from being universal in the States, and, in many, is thought to be unreasonable, and impolitic. At the same time, they have their liens by specialty, &c. To suppose that the specialty lien is dissolved, and that the attachment lien remains, would be absurd.

The doctrine of lien by attachment is opposed to other parts of the act. By *sect.* 5th, the commissioners are to take into possession *all* the estate of the bankrupt, and inventory and appraise it. By *sect.* 6th, they are to transfer *all* to the assignee. By *sect.* 10th, the assignment is to be good, as against the bankrupt, and *all persons claiming from him, by subsequent act.* By *sect.* 12th, when property is *conveyed* or *assumed* on condition to redeem, they may redeem, and *shall assign*, for general benefit. By *sect.* 13th, they may assign *all* the debts.

By *sect.* 29th, and 30th, a dividend is to be made among such as have proved their debts, and *in proportion.* Then comes *sect.* 31st, providing for the distribution, in the clearest manner, and shewing that the property assigned, &c. was subject to *attachment,* and included *the whole of the bankrupt's estate.* And *sect.* 44th authorizes the sale of all the bankrupt's estate at auction. Viewing these provisions together, it appears, indisputably, that the commissioners are to assign *all* the estate of the bankrupt, and are to distribute it *proportionably,* with this exception, that where there is *a right of property,* arising out of *lien* by *conveyance* or *assurance,* they shall redeem.

It is worthy of remark, that the English act allows of no preference by *judgment* or *attachment.* (*b*)

But, admitting that the attachment was a lien, still we contend, that *the suit was barred,* and the plaintiffs below must resort to some other method of rendering their lien *effective.* If an attachment constitutes a lien on the property, and gives a preference, the *commissioners,* by *sect.* 12th, must *pay the debt.* If they do not, you may procure an order to sell the property, by application to the *District Judge,* who stands in the place of the *Lord Chancellor* in England. (*c*) In *Bro. Ch. Ca.* 548, there is a standing order on this subject. The commissioners are to sell the property at auction; to settle the account; to receive the surplus; or, if there is a deficiency, to permit the creditor to prove *pro tanto.* The commissioners are to settle the whole. If the bankrupt obtains his certificate, it is a *bar* to all debts due and owing at the commission of the act of bankruptcy. It is unheard

(*b*) *Cullen* 242, 3, &c. *Cooper* 186.
(*c*) *Cooper* 186, and 265. 2 *Atk.* 528.

R

1803.

INGRAHAM
v.
PHILLIPS.

of, that after certificate you may proceed at common law. (*d.*)

Further, the statute, unequivocally, makes the certificate a bar. " The bankrupt shall be discharged from all debts by him due and owing, or which might have been proved." (*e*) The cause of action is taken away in " *all possible cases.*" How, then, if the certificate is pleaded, can a judgment be rendered ? The same section declares, that the defendant shall not further be " *impleaded*" for, or on account of, any of said debts. It also provides, that the certificate shall be sufficient evidence, and a verdict shall pass for the defendant ; unless there is proof of *fraud* or *concealment.* It is remarkable that this section has *one exception*, and *two provisos*, and nothing is said about attachments, or proceeding at law, in any case. Then, the cause of action is extinguished ; the bankrupt shall not be impleaded ; verdict shall be given for him ; and this in every possible case.

Finally, as the right of action is taken away, so is the *jurisdiction of the Court*, as to any *ulterior proceedings*.

*Dwight*, for the defendants in error.

It appears from the record, that the attachment was prior to the date of the bankrupt law. The question, then, is simply this : Does a creditor, in Connecticut, by virtue of an attachment, acquire a *lien* upon the property of his debtor ? *Lien* is a right which one man has to hold the property of another, until the claim of the former is satisfied. The attachment law of this State authorizes a creditor to attach and hold the property of his debtor, to respond the judgment, which he shall ob-

(*d*) *Cullen* 388.   1 *Cook* 508.           (*e*) *Sect.* 34.

tain in the action thus commenced. The first attachment gives a complete preference, which cannot be defeated by any subsequent act of the debtor, or of other creditors. If it be possible to frame a case exactly to meet the provisions of the 63d section of the bankrupt law, one would think this to be that case ; and no reasoning can illustrate, or enforce this point.

The authorities cited do not apply, because in England they have no such attachment law, and, of course, no such lien.

But, it is contended, that the certificate is a *bar*, and that, of course, no judgment can be rendered. The effect of the certificate is to discharge the bankrupt from *all his debts*, due at the date of the commission ; so that neither his person, nor his future acquisitions shall be liable therefore. This effect can be secured to the bankrupt, in the present case, on the principles for which we contend. The judgment is against the defendant ; but, as it appears by the pleadings, that he has received his certificate, *execution* is ordered against *the property taken and holden by the attachment*, and to be satisfied solely by that.

BY THE WHOLE COURT,

The judgment was affirmed.