the value of the mortgaged premises at the time of the foreclosure.

W. Sullivan, for defendant, admitted that the only question in the cause was, whether the plaintiff was entitled by law to recover such balance.

F. C. Gray, for plaintiff, stated, that the point had been repeatedly decided in favour of the right of the plaintiff.

## Case No. 10,509.

### In re O'MARA.

[4 Biss. 506.] [1]

District Court, N. D. Illinois. Oct., 1868.

ARREST OF BANKRUPT UNDER PROCESS FROM STATE COURT.

Where a bankrupt is under arrest under process from a state court, he should make application to that court, before coming into the court of bankruptcy to obtain his release. This practice is less likely to produce conflict of jurisdiction.

In bankruptcy. Motion to discharge the bankrupt [Michael O'Mara] from arrest on ca. sa. issued from the circuit court of Cook county.

OMEARA (UNITED STATES v.). See Case No. 15,919.

OMEGA, The (The CAMBRIDGE v.). See Case No. 2,336.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

## Case No. 10,510.

### The OMER.

[2 Hughes (1877) 96.] [1]

District Court, E. D. Virginia.

MARITIME LIENS—MATERIAL-MEN—PRIORITY.

An order is taken by material-men, on a consignee, for the freights which a vessel is to earn on a voyage. The order is given to satisfy them for a balance due. The vessel was disabled at sea from pursuing her voyage, put into Norfolk, and there other material-men refitted her. *Held*, that the order for freights to be earned only suspended the lien of the first material-men, which is good for the balance due them, but that the lien of the second material-men, who contributed "most immediately" to the completion of the voyage, must first be paid.

[Cited in The Krank G. Fowler, 8 Fed. 333; The Rapid Transit, 11 Fed. 335.]

In admiralty. The vessel is libelled by Staples. Peed & Co., of Norfolk, for supplies, etc., disbursed to her to the amount of $4,012.80, to enable her to complete her voyage from Baltimore to Demerara, after putting in at Norfolk. The house of Loud, Claridge & Co., of Baltimore, come in by petition, claiming to be paid $1,128.09; the balance of an account due them for disbursements in Baltimore, in part for fitting her out for said voyage. Both the libellants and the petitioners claim as material-men; the petitioners for disbursements in Baltimore, the libellants for disbursements in Norfolk, in fitting out the vessel for the same voyage; the latter after she had put in in distress. The Omer sailed in ballast from Baltimore to Norfolk, where she received from Peters & Reed a cargo for Demerara. In the charter-party executed here, an order was given by the master on the consignees to pay the freight which was to be earned to the order of Loud, Claridge & Co., who took this assignment of freight, as they now allege, as collateral security for their disbursements in Baltimore on which the $1,128.09 was due. After taking on her cargo here, the brig set sail for her destination. But she encountered bad weather when several days out from the Virginia capes, fell into distress, and was obliged to put back into Norfolk. She here was obliged to discharge her cargo, and the libellants, Staples, Peed & Co., were employed by her master, with knowledge of her owners and of Loud, Claridge & Co., to repair and refit and supply her for the renewal and completion of her voyage. The libellants took possession of her for that purpose, which they held until the libel was brought. The cost of the repairs and disbursements made by Staples, Peed & Co., under the eye and approval of the master, was $4,012.80, and is conceded to be just. It was found necessary to resort to a bottomry loan to meet these expenses, and advertisement was made in the Norfolk newspapers for this loan, which was to be upon the faith of the

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

vessel, freight, etc. Hearing of this proposed resort to a bottomry loan, Loud, Claridge & Co., through their agents here, Peters & Reed, notified Staples, Peed & Co. not to allow the freight to be included in the bottomry pledge. There is also evidence that a member of the house of Loud, Claridge & Co. stated on two or more occasions that he relied upon the assignment of freight which his house had received as above mentioned for the payment of his debt, and did not rely upon a lien upon the vessel, and regretted that he did not have such a lien. The master failed to obtain a bottomry loan, and the voyage of the brig to Demerara was not renewed, and was broken up in consequence. The owners in New Brunswick being unable to satisfy the claim of Staples, Peed & Co., this house libelled the vessel in this court, and the house of Loud, Claridge & Co. brought their petition here.

HUGHES, District Judge. No objection is made by either libellants or petitioners against the payment of some small seamen's claims and costs which have been satisfied by special decrees. It may also be stated that the vessel has, by consent, been sold by the marshal at auction for $3,100, Loud, Claridge & Co., being the purchasers. The vessel is alleged by the libellants to have brought only two-thirds of its value, but no exception has been taken to the sale. The petitioners claim to share as material-men pro rata in the fund to be distributed, with Staples, Peed & Co. I am to decide whether they are entitled to do so, or whether the whole fund shall go to Staples, Peed & Co.

It is insisted on the part of the latter that the petitioners in taking a particular lien for their claim by the assignment of the freight, waived and lost their general lien upon the vessel. I do not think so. The acceptance of an order for the freight suspended their right to resort to their general lien until the freight was paid or was lost. Their general lien remained and is still good. It is further insisted by the libellants that their claim is superior to that of Loud, Claridge & Co., because they contributed "most immediately" to the completion of the voyage. It cannot be questioned that, as a general rule, this latter principle is a good one. It is certainly good in this case. They had possession of the vessel on which they had disbursed the amount for which they libel her. By right of that possession and of the primary lien which they had for the disbursement, they could have enforced the payment to themselves of their claim, before she could have been released under the bottomry bond for which advertisement was made. They brought their libel to enforce the lien which they held by virtue of their possession, and by virtue of having contributed last to fitting the vessel for the voyage. Even if Loud, Claridge & Co. had taken a bottomry bond for their claim when the vessel was in Balti-

more, yet Staples, Peed & Co.'s lien for their subsequent disbursements would have been good against such a bond. See The Jerusalem [Case No. 7,294]. The case of The Paragon [Id. 10,708], is to the same effect, Judge Ware expressly holding that among material-men, the one contributing "most immediately," that is to say, at the latest stage of the voyage, to enable the vessel to complete it, has preference over those who contributed at an earlier stage of the voyage.

Staples, Peed & Co. may have a decree for the whole fund left after satisfying costs and seamen's wages.