WILLIAM TABER, The (GEIGER v.). See Case No. 5,300.

=====

## Case No. 17,758.

### The WILLIAM T. GRAVES.

[8 Ben. 568; 9 Chi. Leg. News, 92; 14 Alb. Law J. 408.] [1]

District Court, N. D. New York. Nov., 1876. [2]

LIEN—PRIORITY—REPAIRS—MORTGAGE.

The lien given by the law of the state of New York, for repairs to a domestic vessel, has priority over a mortgage on the vessel given before the repairs were made.

[Cited in The Hiawatha, Case No. 6,453; The Guiding Star, 9 Fed. 524; The Venture, 26 Fed. 287.]

Scott's Case [Case No. 12,517] disapproved.

Williams & Potter, for libellant.

Thad. C. Davis and Mr. Clinton, for claimants.

WALLACE, District Judge. This cause involves the single question whether title, acquired under the foreclosure of a mortgage on the vessel, is subject to the lien, for repairs subsequently bestowed upon the vessel, given by the laws of New York. The mortgage was duly recorded, pursuant to section 4192 of the Revised Statutes of the United States, and thereafter, while the vessel was in possession of the owner, the engine of the propeller was repaired by the libellant on the credit of the vessel at her home port in Buffalo. The laws of New York confer a lien for such repairs, which is to take preference of all other liens upon the vessel except seamen's wages. After the repairs were made the mortgage was foreclosed, and the vessel was purchased by the claimant upon the foreclosure sale. Subsequently this libel was filed, and process in rem issued to enforce the lien for repairs.

The question thus presented is of great practical importance. Since the 12th admiralty rule was modified in 1872, vessels, upon which there are mortgages, are daily seized upon process in rem issued from this court to enforce liens for supplies or repairs, conferred by the laws of New York; and doubtless a similar practice prevails in the other courts of admiralty, sitting within states where such liens are given by the local law. These laws exist in nearly all the states having navigable waters within their borders, or contiguous thereto, and the question now presented, with modifications arising from the terms of the local laws, has arisen in other courts of admiralty exercising jurisdiction over the lakes and the navigable waters connecting the same. The precise question was decided adversely to the priority of the lien for repairs, in the district court of the United States for the Northern district of Ohio. Scott's Case [Case No.

12,517]. I regret to be unable to concur in the conclusion there reached. The intimate commercial relations between the citizens of the several states upon the lakes, subjecting them of necessity to the contingency of adjudications in different courts of admiralty, render it highly important that these courts should apply a uniform rule of decision upon a question of this kind. Investments are made, securities taken, credit given, and commercial transactions conducted in reliance upon the legal rights of the parties to them as declared by the decisions of the courts. The uncertainty introduced into these transactions, if the rights of the parties depend upon the adjudication of different tribunals which entertain different views, is so discouraging and depressing to commerce between the citizens of these states, as to render applicable the remark of Lord Ellenborough (2 East, 202), "It is often more important to have the rule settled than to determine what it is."

But the importance of the question involved, the expediency, in the interest of commerce, of protecting claims for supplies and repairs to vessels, the strong natural equity of such claims, and the hope that what I conceive to be the true rule, may be determined before precedents give stability to what I deem an error, have induced me to disregard the Case of Scott, and assign briefly the reasons which lead me to defer the mortgage to the claim for supplies.

No doubt exists as to the competency of state legislation to determine the rank of liens upon domestic vessels when it does not invade the jurisdiction of the courts of admiralty, or the legislation of congress concerning such liens; and courts of admiralty will enforce the lien given by the local law by process in rem where the cause of action is maritime in its nature; and where the claim is not maritime, they will recognize the lien in the distribution of proceeds in the registry of the court. The St. Lawrence, 1 Black [66 U. S.] 522; Peyroux v. Howard, 7 Pet. [32 U. S.] 321; The Orleans v. Phœbus, 11 Pet. [36 U. S.] 275. In enforcing the lien given by local laws, courts of admiralty are governed by the terms of these laws where they are explicit, and not by the general doctrines of maritime law. 2 Pars. Shipp. & Adm. 324. It follows that, inasmuch as the statute of New York gives preference in rank to the lien for repairs over all other liens, except for seamen's wages, the important inquiry is, whether the rule thus prescribed is repugnant to the rules which control courts of admiralty in assigning rank to liens, or repugnant to any legislation of congress over vessels of the United States.

The legislation does not trench upon any of the rules of the admiralty regulating priorities between liens, because neither of the liens involved are maritime liens. As to other liens, in dealing with questions of priority courts of admiralty are governed by equitable principles. Thus in accordance with the equitable rule which favors diligence in asserting

---

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 14 Alb. Law J. 408, contains only a partial report.]

[2] [Affirmed in Case No. 17,759.]

a lien, when several claims of the same rank exist and a decree has been obtained on one, that claim is accorded priority over the others. The Globe [Case No. 5,483]. And following the equitable rule that equality among creditors is equity, claims of the same rank will be discharged rateably if all cannot be paid in full, where no priority has been acquired by diligence. The Wm. F. Safford, Lush. 69. But it is a controlling rule in admiralty that priority between claims depends not upon precedence in date, but upon the favor due to the nature of the claim; priority in time must yield to priority in rank; the claim of the material man must give way to that of the seaman, and both to that of the salvor; and as between holders of bottomry bonds, the last in point of date is entitled to priority of payment, because the last loan furnished the means of preserving the ship, and without it the former lenders would entirely have lost their security. Abb. Shipp. 163.

Applying this rule in determining the question of priority between a mortgage and a claim for repairs, it seems very clear that the latter should be regarded with the highest favor, and should outrank the mortgage. "There is nothing," says Emerigon, "which is regarded with so much favor as debts for work and labor furnished to a vessel." If the repairs are done upon a foreign vessel, the claim constitutes a maritime lien, to which, of course, an earlier lien not maritime must give way. If they are done upon a domestic vessel, the same lien is conceded to the claim by the civil law, the particular maritime codes and the general maritime law of all nations, except in Great Britain and the United States, where the maritime lien, elsewhere universally acknowledged, has been displaced by the encroachments of the common law courts of England upon the jurisdiction of the admiralty.

It has been strenuously contended by many of the ablest jurists of our own country that the maritime lien still exists in the admiralty jurisprudence of the United States, and many learned judges have concurred in the opinion; but the question is now finally at rest, and the maritime lien is denied where the repairs or supplies are furnished to domestic ships. The Lottawanna, 21 Wall. [83 U. S.] 558.

The high favor with which the claim is regarded, and the strong natural equity which sustains it, is evidenced by the local laws enacted in England and in more than twenty of the states of this Union to place the claim upon the same footing with maritime liens.

If, however, the argument, that priority between liens not maritime is to be determined upon analogies derived from the law of maritime liens, should be deemed unsatisfactory, another reason exists why the lien here should rank side by side with maritime liens, and that is found in the complete assimilation in the character of the liens which is effected by the local law. When it is considered that the true meaning and efficacy of a maritime lien

is simply that it renders the vessel liable to the claim without a previous judgment of sequestration or condemnation, and without establishing the demand as at common law, and that the action in rem carries the lien into effect (Ingraham v. Phillips, 1 Day, 117; Barber v. Minturn, Id. 136), it will be seen, that no practical distinction exists between a maritime lien and a claim for repairs for which a lien is given by the local law, and that no reason exists why courts of admiralty should not treat the latter as a maritime lien. When the cause of action is of maritime cognizance, the action in rem may be prosecuted in the courts of admiralty, the vessel seized without a previous condemnation, and without establishing the demand, to enforce the lien given by the local law, precisely as in the case of a maritime lien.

It remains to inquire whether the lien given by the state law contravenes any legislation of congress concerning ships and vessels. As is said in White's Bank v. Smith, 7 Wall. [74 U. S.] 646: "Congress having created, as it were, this species of property, and conferred upon it its chief value under the power given in the constitution to regulate commerce, we perceive no reason for entertaining any serious doubt but that this power may be extended to the security and protection of all persons dealing therein." The only statute of congress, bearing upon the present question, is that, by which mortgages on vessels are required to be recorded in the office of the collector of customs where the vessel is registered or enrolled, in order to be valid as against any person having no notice of the mortgage. It has been held that by force of this statute a mortgage is valid, notwithstanding state legislation, which requires additional formalities calculated to give notice to creditors or subsequent purchasers. Aldrich v. Aetna Ins. Co., 8 Wall. [75 U. S.] 491. It has been argued that the states can pass no laws which can affect the validity of mortgages so recorded. That congress could invest mortgages on vessels with such invulnerability is probably true, but no such intent can fairly be implied from the language of the act. It is a registration act, and as such, excludes all state legislation upon the same subject; and this was the only point decided by the supreme court in Aldrich v. Aetna Ins. Co. [supra.] It has been held that liens given by the laws of a state for supplies furnished a domestic vessel take preference over a mortgage subsequently recorded. Francis v. The Harrison [Case No. 5,038]. This conclusion of necessity involved the proposition that the states are competent to create liens which will take preference of the lien of a mortgage recorded pursuant to the act of congress, and I see no reason to doubt their competency to determine the conditions of priority, so long as they do not infringe upon the legislation of congress by imposing additional requisites in the recording of mortgages.

My attention has been called to the cases of

The Skylark [Id. 12,928], The Grace Greenwood [Id. 5,652], and The Lady Franklin [Id. 7,983], where the mortgage was held to have priority. These cases are not applicable here, because the local law did not give a lien paramount to the mortgage.

A decree is ordered for the libellant.

[On appeal to the circuit court. the above decree was affirmed. Case No. 17,759.]