### THE AMERICA.

(District Court, D. New Jersey. March 6, 1909.)

SHIPPING (§ 87*)—LIEN FOR DAMAGES—PRIORITIES BETWEEN CLAIMANTS.

Claims against a vessel for damages resulting from collisions occurring on different dates are entitled to priority in the inverse order of such dates, upon the theory that the first claimant by virtue of his lien acquires a proprietary interest in the vessel, which is subject to the risks of her subsequent navigation, including liability for subsequent torts.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 340; Dec. Dig. § 87.*]

In Admiralty.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles Thaddeus Terry (Edward Ward McMahon, of counsel), for libelant Henry Steers, Inc.

Foley & Martin (Frank A. Spencer, Jr., on the brief), for libelant Miller.

Convers & Kirlin (Russell T. Mount, of counsel), for libelant Morgan.

CROSS, District Judge. The steam tug America was sold August 20, 1907, under process issued out of this court, and the proceeds of sale, amounting to $4,201.49, are now in the registry of the court. The various claims against the tug were referred to a commissioner, who has reported the several amounts due thereon, and his report has not been excepted to. All of the above libels were filed for damage for collisions, the first of which occurred April 4, 1907, and upon a libel filed therefor, June 29, 1907, by John D. Miller and another, a decree was entered in their favor for the sum of $594.57. Henry Steers, Inc., on August 3, 1907, filed a libel for damages for a collision which occurred May 28, 1907, upon which libel a decree has been entered in its favor for $905.76. Another libel was filed July 23, 1907, by Henry Steers, Inc., for a collision which occurred June 28, 1907; and a libel was also filed July 13, 1907, by Josiah Morgan, master, etc., for a collision occurring June 28, 1907. Upon these last-mentioned libels decrees have been entered as follows: In favor of Henry Steers, Inc., for $5,042.28; and in favor of Josiah Morgan, for $900.40.

All of the foregoing decrees were entered upon tort claims, and, there being insufficient funds in the registry to pay them in full, the question presented for decision is as to the order of priority to be observed in their payment. On behalf of the libelants Miller et al. it is claimed that the decrees should be satisfied, so far as the fund in court will permit, in the order in which the several collisions giving rise to the claims occurred; while on behalf of the other libelants it is claimed that they should be paid in the inverse order of the dates of their creation. Whichever of these contentions is allowed, it is admitted that the claims of Henry Steers, Inc., and Josiah D. Morgan, master, arising out of the collisions occurring on the 28th day of June, 1907, are of equal rank and should be paid pro rata, since the collisions giving rise to them occurred, to all intents and purposes, simultaneously.

In The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969, it is settled that maritime liens for collisions are to be preferred in admiralty to liens for previous supplies; but the question of the priority of liens for collisions occurring at different times, although mooted was not decided by that case. However, in The America, Fed. Cas. No. 288, it appeared that a collision claimant libeled the America for damages done July 12, 1852. A second claimant filed a libel against the fund in court for damages caused by a collision which occurred July 11th, one day earlier than the happening of the collision by which the original libelant suffered damage. Other libels were likewise filed against the fund in court. Whereupon the court, after directing that liens for wages should be first paid, and also the liens of certain materialmen who had repaired the vessel after the last collision, held that the lien arising from the last collision was prior to the other remain-

ing liens, including that arising under the earlier collision. In the course of his opinion Judge Hall says:

"The last lien should be preferred, whether it attaches by reason of salvage services or a collision. If a collision claimant does not enforce his lien until the vessel is wrecked, or in danger of loss, and she is saved by the efforts of salvors, those salvors should certainly have the preferable claim; and if, after salvage services are effected, the vessel causes damages before the salvor's lien is enforced, the right of the salvors, like any other lien or proprietary interest, must be subject to the claims of the injured party. In short, all parties, except seamen, holding ordinary maritime liens upon a vessel, are to some extent treated as though they had a proprietary interest in the ship; and their interests, whatever they may be, are subject to all liens which the necessities of the ship, or a collision caused by the carelessness or misconduct of those in charge, may subsequently impose."

This case was followed in The Frank G. Fowler (D. C.) 8 Fed. 331, where the question now presented was again fully and carefully considered by Judge Choate, who reached the conclusion that collision claims were to be paid in the inverse order of their occurrence. In the course of his opinion he says:

"A lien or tacit hypothecation is at once created and vested in the damaged party, subject to be defeated only by unreasonable laches in bringing the proceeding in rem, by which alone it can be enforced. A party who has already suffered such a damage has such a lien of hypothecation of the vessel. He is to that extent in the position of an owner. He has a quasi proprietary interest in the vessel. It is true he cannot, as an owner, control her employment, or prevent her departure on another voyage, except by the exercise of his right or power to arrest her for the injury to himself, and in some cases the second injury may be done before he has an opportunity to arrest her. Yet if her continued employment is not his own voluntary act, nor with his own consent, it is his misfortune that the vessel in which he has an interest is used in a manner to subject herself to all the perils of navigation. This use, unless he intervenes to libel and arrest her, is perfectly lawful as against him. If she is lost by shipwreck, of course, his lien becomes valueless, and I think his interest is not exempted from this other peril to which the vessel is liable, namely, that she may become bound to any party injured through the torts of the masters and mariners. The principle as to marine torts is that the ship is regarded as the offending party. She is liable in solido for the wrong done. The interests of all parties in her are equally bound by this lien or hypothecation, whether the master and mariners are their agents or not. * * * I think the same principle is applicable to a prior lienholder, who, by the tort of the master and mariners, has become, so to speak, a part owner in the vessel. His property, the vessel, though not by his own voluntary act, has been used in commerce. That use was not tortious as to him. It is subject in that use to all ordinary marine perils. One of those marine perils is that it may become liable to respond to another party, injured by the negligence of the master and mariners. No exception to the liability of the vessel, exempting the interests of parties interested in the ship, has been established by authority. To create such exceptions would greatly impair and weaken the security against negligent navigation, which the rule of liability of the vessel is at least partly designed to promote."

The case last referred to was, however, reversed by Judge Blatchford, sitting in the Circuit Court. 17 Fed. 653. I have not been referred to, nor have I found, any later case in which the question has been directly decided. In my judgment, however, the opinion of Judge Choate is the more logical of the two, and the better supported by principle. Judge Blatchford's reasoning was in effect that, since the second collision did not benefit the vessel, it was not entitled to priority over

the lien created by the first collision, thereby seemingly adopting the rule that a subsequent lien is entitled to priority of payment only when it has benefited or increased the value of the vessel out of which all liens are to be satisfied. It is manifest, however, that priorities between collision liens cannot be determined on the theory of benefit to the offending vessel. No collision, be it the first, the second, or the third, can or does benefit the vessel. The John G. Stevens, supra, moreover, expressly held that a tort lien, although it did not benefit the vessel, nevertheless had priority over an earlier lien for supplies, which presumably did. There is no apparent reason why the rule in cases of collision should be different than it is in the matter of successive liens for repairs or supplies, which are ordinarily paid in their inverse order. The proprietary interest created in the vessel in favor of the party injured by the first collision is subject, like all other proprietary interests in her, to subsequent marine perils, including collisions. That a maritime lien created by collision gives a proprietary interest in the res to the injured party is laid down in many cases, among them The John G. Stevens, supra, in which the court said, at page 120 of 170 U. S., at page 547 of 18 Sup. Ct. (42 L. Ed. 969):

"The foundation of the rule that collision gives to the party injured a jus in re in the offending ship is the principle of the maritime law that the ship, by whomever owned or navigated, is considered as herself the wrongdoer, liable for the tort, and subject to a maritime lien for the damages. This principle, as has been observed by careful text-writers on both sides of the Atlantic, has been more clearly established, and more fully carried out, in this country than in England. Henry on Admiralty, 75, note; Marsden on Collisions (3d Ed.) 93."

With this principle established, it logically follows that such proprietary interest may be lost, not only by laches, but by the establishment of a subsequent proprietary interest of the same character. The party first injured has the right to arrest the vessel and establish his lien. Failing to do so, he submits his proprietary interest in the vessel to all of the ordinary perils of navigation; and, since marine torts are chargeable to the vessel as the offending party, one of the perils of navigation to which the party first injured thereby submits his interest is the liability of the vessel to commit further torts. The true theory is that if the party first injured, and who has thereby acquired a proprietary interest in the vessel, permits it to continue in navigation, and the vessel commits a subsequent tort, he in a sense becomes a party to the subsequent tort, and hence his interest is subject thereto and liable therefor. The conclusion arrived at in this case is in accord with the views of the author of Hughes on Admiralty, where, at pages 348–351, after referring to the variant decisions in The Frank G. Fowler, and making an extensive citation from the opinion of Judge Choate, he says:

"If the principles laid down by the Supreme Court in The John G. Stevens are to be the guide, it would seem that the District Judge was the one who should be followed. When we once settle the doctrine that a maritime lien is a jus in re, or a proprietary interest in the ship, it would seem to follow necessarily that the owner of that interest, even if not guilty of laches, and even if having no control over the master in charge, impliedly takes the risks of subsequent accidents, and holds the ship out to the world as a thing of life, liable to make contracts and commit torts, and that he should not be heard to dis-

pute the claims of others who have been brought into relations with her upon this basis."

Logically I can see no other possible conclusion. Consequently an order directing the payment of the collision claims in the inverse order of the dates of their creation will be entered.

Other libels for repairs and supplies were filed, but the proctors of such libelants did not appear at the argument, although duly notified thereof, and hence may be taken as asquiescing in the rule laid down in The John G. Stevens, supra, which, of course, would bind this court in any event.