ST. JOHN'S PARISH (MAURO v.). See Case No. 9,313.

---

## Case No. 12,229.

### The ST. JOSEPH.

[Brown, Adm. 202; 1 Chi. Leg. News, 321; 4 Am. Law Rev. 186; 1 Leg. Gaz. 22.] [1]

District Court, W. D. Michigan. May 29, 1869.

MARITIME LIENS — ORDER OF DISTRIBUTION — MORTGAGEE AND MATERIAL-MEN — FOREIGN AND DOMESTIC—ADVANCES.

1. Strictly maritime liens have priority over mortgages, without reference to the period of time when they accrued. Material-men, having liens by local laws, have priority over mortgagees in the distribution of the surplus. In this case, the court ordered the different classes of liens paid as follows: First, maritime liens; second, liens given by state laws; third, mortgage liens; fourth, the assignee in bankruptcy of the owner.

[Cited in Moir v. The Dubuque, Case No. 9,-696; The Alice Getty, Id. 193; The Theodore Perry, Id. 13,879; The Hiawatha, Id. 6,453; The Illinois, Id. 7,005; The E. A. Barnard, 2 Fed. 721; The General Burnside, 3 Fed. 230; The Canada, 7 Fed. 735; The Guiding Star, 9 Fed. 524; The Daisy Day, 40 Fed. 541.]

[Cited in Hammond v. Danielson, 126 Mass. 296.]

2. No unforeseen and unexpected emergency need be shown to warrant a lien in favor of a material-man. Where the master obtains supplies, they are generally supposed to be sold on the credit of the vessel, and in such cases the vessel is liable.

3. A part owner and general agent and superintendent of a line of boats, of which the respondent was one, has no lien for material, but must be regarded as having given credit to the company.

[Cited in The Two Marys, 10 Fed. 925; The Rapid Transit, 11 Fed. 327, 331; The Murphy Tugs, 28 Fed. 432.]

4. Advances made by a mortgagee to subsisting lien holders at the time of taking possession under the mortgage should be paid in the order in which the liens themselves would have been paid.

Motion for order of distribution.

Robert Rae, for material-men.

Chas. Hitchcock, for mortgagee.

WITHEY, District Judge. There has been a decree in favor of the libellants; the vessel has been sold; the proceeds paid into the registry, from which libellants have been paid their decree and costs, and there remains a surplus of $24,046.20. Nine supplemental suits, by petition, have been entered by rival claimants against these proceeds. They are, by material-men, under contracts civil and maritime; material-men, under statutory liens; a mortgagee, under a mortgage duly recorded according to the act of congress; and the assignee in bankruptcy of the owners. The fund is not sufficient to satisfy all. The principle is laid down by

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission. 4 Am. Law Rev. 186, and 1 Leg. Gaz. 22, contain only partial reports.]

the supreme court of the United States, in Andrews v. Wall, 3 How. [44 U. S.] 568, that it is an inherent incident to the jurisdiction of the admiralty court, to entertain supplemental suits by the parties in interest, to ascertain to whom those proceeds rightfully belong, and to deliver them over to the parties who establish the lawful ownership thereof. The admiralty courts of this country have generally applied this principle to claims arising upon liens given by state statutes, and to mortgages, as well as to strictly maritime liens. The important question, therefore, is as to the order of payment. As between the claimants before the court, maritime liens have priority over all the others; this was conceded at the hearing.

Until recently, we find no decision that does not give to the material-men having subsisting liens by local laws priority over a mortgagee in the distribution of surplus, while there are decisions giving priority to such material-men. Dudley v. The Superior [Case No. 4,115]; The Paragon [Id. 10,708]; The Hendrick Hudson [Id. 6,355]; Justi Pon v. The Arbustci [Id. 7,589]; Marsh v. The Minnie [Id. 9,117]; Provost v. Wilcox, 17 Ohio, 359. Counsel for mortgagee has read a newspaper report of the case of The Grace Greenwood [Case No. 5,652], recently decided by the district court of Northern Illinois, postponing material-men under local laws to the mortgage lien, on the ground that the mortgage becomes, by its record in the office of the collector of customs, as strong in equity as the claims of the material-men, and applies the surplus upon the principle that "that which is first in time is strongest in right." As will be seen by the authorities, this decision is at variance with former decisions, and it does not commend itself to our judgment. The water craft law of Michigan, under which some of the claims arise, postpones the mortgagee to the material-man, without reference to date of liens. Strictly maritime liens have always held priority over mortgages, without reference to the period of time when they accrued, on the ground that it is as much for the interest of the mortgagee as for the owner, that the ship should be kept in repair and supplied, to enable her to keep afloat and be in receipt of earnings; thus adding to the value of the mortgage security, as well as to the ability of the mortgagor or owner to pay the mortgage. We do not see why material-men, holding liens by the local law, have not the same position of priority as regards the mortgagee, and for an equally good reason, as is conceded to material-men having strictly maritime liens.

We do not understand the law of congress, in reference to recording mortgages, as affecting the question. We, therefore, hold to the following order of payments and priorities, as between the parties before the court: First, maritime liens; second, liens given by state laws; third, mortgage liens; fourth, the assignee in bankruptcy of the owner.

Before referring to the individual claims, we notice a point made by the mortgagee against a portion of the claims presented, viz: that no unforeseen and unexpected emergency is shown, and which it is claimed is necessary to justify holding that a lien exists. Until the case of Pratt v. Reed, decided in December, 1856, by the supreme court of the United States (19 How. [60 U. S.] 360), it had not been regarded as necessary to a maritime lien, that any unforeseen and unexpected emergency should exist for materials and supplies to a ship, when obtained by the master. And it has been questioned by high authority, whether the court, by that case, intended to change the law of liability for supplies to a vessel. The court does not intimate any such intention, and does not review the authorities or refer to the previous rulings of the courts of admiralty. The facts of the case were that the owner, who was also master, procured the supplies without any representations of necessity, and apparently under some general understanding and arrangement, which raised the presumption "that there could be no necessity for the implied hypothecation of the vessel."

His honor, Mr. Justice Swayne, at the June term, 1868, of the United States circuit court, at Detroit, is reported to have held, in the case of Kelly v. The Pittsburgh [Case No. 7,674], "that the case of Pratt v. Reed [supra] had not altered the law of liability for supplies furnished to a vessel. Where the master obtains supplies, they are generally supposed to be given on the credit of the vessel, and, in all such cases, the vessel is liable for them." Recently, his honor, Mr. Justice Davis, in the United States circuit court, at Chicago, held, that to create a maritime lien for supplies, it must appear not only that they were needful, but the existence of some unforeseen and unexpected emergency must be shown,—The Lady Franklin [Case No. 7,982]; thus, as we understand, holding that Pratt v. Reed did alter the law of liability for supplies, to which case the learned judge refers. In view of the rulings of the two distinguished members of the supreme court of the United States, taking different grounds as to the import of the decision in Pratt v. Reed [supra], it may be said the question is still an open one. We feel bound to follow the ruling of Judge Swayne; besides our own judgment is that such is the correct view.

In reference to the individual claims, under the views already given, we regard the claim of James E. Stevens as possessing no merits. Stevens was one of the owners, and was general agent and superintendent, at St. Joseph, Michigan, of the line of boats owned by the company—The Lake Michigan Transportation Company. He held sixty thousand dollars of the stock of the com-

pany; moneys were received by him during the season of navigation, and he must be regarded as having given credit to the company, and not to the vessel.

Hollister and Phelps, of Chicago, claim a lien under state laws—$1,978.11, accruing between June 27 and October, 1867, the balance between March 27 and April 4, 1868. By the laws of Illinois, a claimant must assert his lien against a vessel within nine months after the same is due, or the lien ceases as against subsequent incumbrancers, creditors, and bona fide purchasers. [Laws 1855, p. 149.] The vessel was taken possession of by the Third National Bank of Chicago, for breach of the conditions of its mortgage, October 16, 1868, and the libellants, Miller & Miller, did not file their libel until November 13. No excuse, therefore, is shown for delaying to assert this claim of 1867, until April 23, 1869. It must, we think, be postponed, at least to the payment of all the other subsisting claims; their claim, which accrued during the season of 1868, is allowed.

Farrar, Taft & Knight, of Buffalo, claim a maritime lien for materials and supplies which accrued between May and September, 1867. The greater portion of this claim is for machinery sent from Buffalo to Chicago on an order, and there delivered to, and received by, the vessel. This was a contract for which the owner would be liable, but creates no lien against the vessel. The other part of the claim, and that earliest furnished, has been allowed to lie so long without being asserted, that as against the other subsequent and subsisting claims by materialmen and the mortgagee, it should be regarded as stale, and be postponed to all the others, except the owner or his assignee.

Good & Co., of Chicago, claim both a maritime lien and, under the water craft law of Michigan, their claim is allowed, as are also the claims of Pratt & Coulson, Aaron D. Rowley, and R. A. Kapp & Co.

The mortgage claim of the Third National Bank of Chicago is allowed, together with such advances as were made by it to subsisting lien holders, when it took possession of the vessel under the mortgage, such advances having been made to seamen and others, to save expense and delay that would grow out of suits threatened against the ship. These advances will be paid in the order already announced in reference to priorities.

The amounts of the respective claims will be ascertained, and payment decreed accordingly.

Order of distribution.

NOTE. Under the recent decision in the case of The Lotawana, 21 How. [62 U. S.] 558, the principal question involved here becomes of considerable importance. See The Grace Greenwood [Case No. 5,652]; 2 Pars. Shipp. 149; Reeder v. George's Creek [Case No. 11,654]; In re Scott [Id. 12,517]; Francis v. The Harrison [Id. 5,038].