## THE CANADA.

*(District Court, D. Oregon.* April 28, 1881.)

1. STEVEDORE'S SERVICES.

   Upon general principles the services of a stevedore are maritime in their character, and, when performed for a foreign ship, he has a lien thereon for the value thereof.

2. FOREIGN PORT.

   A vessel is in a foreign port, in the sense of the maritime law, when she is in a port without the state where she belongs and her owner resides.

In Admiralty.

*Rufus Mallory*, for libellants.

*John H. Woodward*, for claimants.

DEADY, D. J. The libellants, J. A. Brown and, W. T. Mc-Cabe, bring this suit as stevedores against the ship Canada to recover $1,007.10. It appears from the libel that the Canada is an American vessel, owned in New York; that she reached this port on March 4, 1881, from the former place, with a cargo of railway iron weighing 1,581 tons, to be delivered here; that the libellants were employed at this port by the master to discharge the cargo for a compensation of 60 cents a ton, and performed said contract prior to March 21st, for which they are entitled to the sum of $948.60; that in performing said contract they expended and paid out $58.50, in docking said vessel and otherwise fitting her for discharge; and that there is due them for such services and expenditures the sum of $1,007.10, which sum is a lien upon said vessel. To this libel Effingham B. Sutton and others, claimants of the vessel as mortgagees,—in possession under a mortgage from the owners, George and Jabez Howes,— except, and allege that the facts stated therein do not give the libellants a lien upon the vessel.

Since the commencment of this suit—April 6, 1881—the Canada has been sold upon an interlocutory decree, made in the suit of Thomas F. Neill and others for wages, commenced March 9, 1881, for the sum of $26,000, but the proceeds are not sufficient, after paying the claims against her which are admitted and have precedence over the claim of the mortgagees, to-wit, wages, bottomry bond, and towage and pilotage, to satisfy the same.

If the case was one of first impression I should have no hesitation in holding that the contract and service of the libellants was a maritime one, and therefore that their claim is privileged and a lien on the vessel. It falls exactly within the definition of such a contract as given by the late learned and accurate admiralty judge of the district of Maine: "By the general maritime law, every contract of the master, within the scope of his authority as master, binds the vessel and gives the creditor a lien upon it for his security." *The Paragon*, Ware, 323.

When this service was performed for the Canada, she was,

in the sense of the maritime law, in a foreign port,—that is, a port without the state where she belonged and her owner resided, (*The Nestor*, 1 Sumn. 74; *The Chusan*, 2 Story, 460; *The Sultana*, 19 How. 362;)—and therefore the master was authorized as the agent of the owner to employ the libellants to aid in the "delivery of the cargo," by discharging it from the hold of the vessel upon the wharf,—that being the essential part of the undertaking and voyage of the ship; or, as it is appropriately characterized in Benedict's Admiralty, § 285, "the crowning act of maritime commerce, that for which all others labor, and to which all other acts are subordinate, and on which the right to freight depends, and which is in fact the great purpose and the only ultimate purpose of a ship—the delivery of the cargo." But in the cases of *The Amstel*, B. & H. 215, (1831;) *The Joseph Cunnard*, Olc. 123, (1845;) and *Cox* v. *Murray*, 1 Abb. Ad. 341, (1848,) decided by Judge Betts; and *The S. G. Owens*, 1 Wall. Jr. 370, (1849,) decided by Mr. Justice Grier, it was held or said that the contract of a stevedore was not maritime, and therefore he had no lien upon the ship for his services.

In *The A. R. Dunlap*, 1 Low. 350, (1869,) Judge Lowell followed these authorities under protest; but in *The George T. Kemp*, 2 Low. 482, (1876,) he refused to follow them, and decided in favor of the stevedore's lien, substantially upon the ground that the services and contract of a stevedore concern the ship and her owner, her voyage and business, and are, therefore, clearly maritime in their nature; and, although he has no lien therefor upon a domestic vessel unless given by the local laws, yet in the case of a foreign ship the general admiralty law gives a lien, as in the case of a material man. And, in speaking of the contrary decisions and the reasons given for them, he says: "They are—*First*, that a stevedore works on land, or on a vessel at the wharf; and, *second*, that his concern is with the cargo rather than with the ship, and they liken him in this respect to the drayman who brings the cargo to the vessel. The notion that the maritime character of a contract for either labor or materials, or of the remedy for furnishing them independently of

contract, depends upon the situation of the vessel as being upon the high seas or in a dock, reached its climax when it was held that a laborer who scraped the bottom of a foreign vessel, preparatory to her being coppered, had no lien. *Bradley* v. *Bolles*, Abb. Ad. 569. And that the ship-keeper of a domestic vessel could not sue, even *in personam*, in the admiralty. *Gurney* v. *Crockett*, Id. 490. These decisions were made during the time, after Judge Story's death, when the supreme court seemed bent upon narrowing the jurisdiction. in all directions, by decisions, some of which have been overruled and others explained to mean much less than they appeared to intend." And adds, (p. 484:) "It seems incredible that it ever could have been thought that the master, who in a proper case may charter, hypothecate, or even sell his ship, cannot bind it for the cost of stowing the cargo, which is one of the ordinary and self-evident necessities of a voyage." And he might have said the same thing as to discharging it.

In *The Windermere*, 2 FED. REP. 722, (1880,) Judge Choate held that the libellant had a lien for his services in removing ballast from a foreign ship, while in the port of New York, for the purpose of putting her in condition to receive cargo for a contemplated voyage. In the course of the opinion he says that the rule which denied the maritime character of a stevedore's services in stowing or discharging cargo could only be maintained "on the doctrine of *stare decisis*, since it is now out of harmony with the accepted principles of maritime law as declared by the courts of admiralty."

The same view was taken of the matter, on principle, by Judge Benedict, in *The Circassian*, 1 Ben. 209. He says: "I confess that I have never been able to see any sound distinction between the nature of the services performed in stowing and breaking out the cargo of a ship and the services performed in its transportation. The stowage and the landing of the cargo form a necessary part of the contract of affreightment. Without the performance of this duty no freight can be earned. The safety of the ship and cargo depends, in a great measure, upon the care and skill displayed

in the performance of this duty, and for its non-performance in a proper manner the ship is liable in the admiralty. It is a service which, when performed by the crew, as is frequently the case, is considered a maritime service, and compensated in the admiralty under the name of wages. And, when not performed by the crew, it devolves upon a class as clearly identified with maritime affairs as are the mariners, and fitted for their duty by a special and peculiar experience."

In *Ins. Co.* v. *Dunham*, 11 Wall. 26, the supreme court say that as to contracts the jurisdiction in admiralty does not depend upon the place where the contract is made, but the nature and subject-matter of it—"as, whether it was a maritime contract, having reference to maritime service or maritime transactions;" and (p. 29) whether maritime or not maritime depends, not on the place where the contract was made, but on the subject-matter of the contract. If that is maritime the contract is maritime.

In *The Emily Souder*, 17 Wall. 669, Mr. Justice Field says: "The steamer was detained at Maranham nearly five weeks, and the moneys advanced by the libellants, it is true, were not entirely for the repairs of the vessel and the supplies needed for the voyage; they were intended and supplied in part to meet the expenses of her towage into port and of pilotage, and to pay the custom-house dues, consular fees, and charges for medical attendance upon the sailors. These various items, however, stood in the same rank with necessary repairs and supplies to the vessel, and the libellants advancing funds for their payment were equally entitled, as security, to a lien upon the vessel."

It is understood that in England, since the passage of the 3 & 4 Vict. *c.* 65, § 6, giving, or, rather, restoring, to the court of admiralty jurisdiction of all claims for "necessaries supplied" to foreign vessels, that not only what is directly furnished to the ship, but what is reasonably proper for the promotion of the voyage, such as tonnage and harbor dues, brokerage for procuring a charter, insurance, and stevedore's services, comes within the act, and entitles the party furnish-

ing the same to a lien upon the vessel. *The Kemp, supra,* 488; *The Windermere, supra,* 728. To the contrary is the case of *The Ilex,* 2 Woods, 229, in which Mr. Justice Bradley, on the circuit, decided, upon the authority of *Cox* v. *Murray,* and *The S. G. Owens, supra,* that a stevedore has no lien for his services, because they are not of a maritime nature.

The supreme court have never passed upon this question directly, but the plain effect of its decision in *The Emily Souder, supra,* is in favor of the stevedore's lien; for certainly the stowing and discharge of cargo as nearly concern the fitment and business of the ship, and are as much maritime in their character, as the payment of custom-house dues or consular fees, both of which were held in that case to be necessary supplies, for which the admiralty gave a lien. Neither has it been decided in this district; and therefore I feel at liberty to follow what I conceive to be the true rule, as deduced from first principles, and as indicated by the later decisions of the supreme court and the district courts of New York and Massachusetts.

To my mind it is very plain that the services of a stevedore are maritime in their nature. A voyage cannot be begun or ended without the stowing or discharge of cargo. To receive and deliver the cargo are as much a part of the undertaking of the ship as its transportation from one port to another. Indeed, it is an essential part of such transportation. Freight is not due or earned until the cargo is, at least, placed on the wharf at the end of the ship's tackle. To say that the final delivery or discharge of the cargo is not a maritime service, because it is, or may be, performed partly on shore, is simply begging the question, as it is the nature of the service, and not the place where rendered, that determines its character in this respect.

Without the services performed by the libellants the Canada would have been unable to accomplish the object of her voyage, or to commence another one. The ship was in a foreign port, and the master without funds or credit. Standing in the place of the owner, he was under obligation to deliver the

cargo of iron as he did. How was he to procure the necessary labor otherwise than upon the credit of the vessel? As it turns out, the owners are insolvent, the freight is hypothecated, the master is probably unable to pay, and, unless the ship is liable, the libellants will lose their labor, for which the ship or owners have received the value from the freighters. Under these circumstances it would not only be an inconvenience but a gross failure of justice if the libellants were denied the right to recover from the vessel for the labor thus performed upon its account and credit. In my judgment the law and the right of this case are with the libellants, and I decline to follow the decisions to the contrary.

The exception is overruled, and there will be a decree for the libellants for the amount claimed, with legal interest from March 21st to date.

NOTE. See *The E. A. Barnard*, 2 FED. REP. 712.