## THE GUIDING STAR.*

### (District Court, S. D. Ohio, W. D December, 1881.)

1. MARITIME CONTRACTS—INSURANCE—MORTGAGE—CONSTRUCTION CLAIMS—PRIORITY OF LIENS—BORROWED MONEY—LIENS UNDER STATE LAW—HOMESTEAD.

Where a boat was seized on a libel for home supplies, and claims against her were filed for foreign and home supplies and repairs, for insurance premiums, for material and labor furnished in the construction of the boat, for a mortgage, and for borrowed money, and the boat was sold; on distribution of the proceeds—

Held, (1) That a contract to pay premiums on marine insurance is a maritime contract.

(2) That a mortgage on a boat is not a maritime contract, and must be postponed to (a) claims for seamen's wages, and foreign supplies and repairs; (b) claims for supplies, repairs, and insurance furnished in the home part of the boat, for which the state law gives a lien, whether the same be furnished before or after the recording of the mortgage; (c) construction claims for which, by the state law, a lien existed prior to the recording of the mortgage.

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

(3) That construction claims are not maritime contracts, and the liens given therefor by the state law must be postponed to liens on maritime contracts, which attach by either the general admiralty law or by the law of the state. A state law cannot confer jurisdiction on a court of admiralty by attaching a lien to a non-maritime contract. Admiralty will enforce only such state liens as are given on maritime contracts.

(4) That the claim of the owner of the boat, for an allowance in lieu of a homestead, cannot prevail against liens by either the admiralty law or state statute.

(5) That the lien given by section 5580, Rev. St. of Ohio, is a lien created by the express terms of the statute, and requires for its perfection none of the proceedings provided in case of mechanics' liens.

(6) That borrowed money is to be placed on the same footing as the purpose for which it was borrowed. Where the latter is of a maritime character, and has a lien attached thereto, whether by the general or the local law, the money advanced to meet it has a lien of equal dignity.

(7) That in the distribution of the fund now in court such claims as are maritime in their nature and subject-matter, and for which the state law gives a lien, including insurance, supplies and repairs furnished in the home port are placed on an equality with the liens given by the general admiralty law for foreign supplies and repairs.

Following *Baxter*, C. J., in *The General Burnside*, 3 FED. REP. 232.

(8) That after paying the costs in this case the fund shall be distributed as follows: (1) Seamen's wages; (2) foreign and home supplies, repairs, insurance; (3) building claims; (4) mortgage claims; (5) claims for borrowed money to which no liens attach.

In Admiralty.

The facts in this case, briefly stated, are as follows: The steamboat Guiding Star was built in the summer of 1878 at the port of Cincinnati, entirely on credit, by Capt. W. B. Miller, who continued to be her sole owner and master up to the date of her seizure, in June, 1881. The claims filed against her are as follows: For foreign supplies and repairs, $17,393.33; for home supplies and repairs, $14,113.63; for insurance premiums, $3,080; for construction claims, $14,684.95; mortgage, $5,000; borrowed money, $22,380.64; allowance in lieu of a homestead, $500. The borrowed money is classifiable as follows: $229 to pay seamen's wages; $11,029.71 advanced towards building the boat; and $11,051.93 to meet the general indebtedness of the boat as the same accrued, including supplies, wages, insurance premiums, and payments on notes given for the building of the boat. All the notes, including those given on construction claims, were drawn up in the name of the boat and her owner. No dispute whatever existed as to the correctness of any of the claims. The total indebtedness of the boat at the time of her seizure was $76,652.52. The sum realized on her sale was $38,310, and the real question for the court to decide was, how should the fund be distributed?

*Moulton, Johnson & Levy* and *W. H. Jones*, for libellants and sundry intervenors.

*Lincoln, Stevens & Slattery, Perry & Jenny, C. K. Shunk, Follett, Heyman & Dawson,* and *Yaple, Moos & Pattison*, for other intervenors.

Swing, D. J. This case has been ably and elaborately presented to the court by counsel, both by oral arguments and in briefs. It involves the distribution of a fund amounting to nearly $40,000, now in the registry of the court, being the proceeds of the sale of the steamer Guiding Star. About 70 libels and intervenors have been filed, embracing such a variety of claims as to cover almost the entire domain of admiralty, so far as the question of liens and their priorities is concerned.

As to what are the facts in the case there is but little if any doubt, excepting on one point, and that is, the circumstances under which the various loans to Capt. Miller, the owner and master of the boat, were made. Aside from the loans obtained for the building of the boat, the other advances consist of two classes; namely, those obtained at the home port here in Cincinnati, and those obtained in ports outside of this state. It is well established that where money is advanced to meet such claims as in themselves have liens according to the rules of admiralty, a lien also exists for such money. But before a lien exists for money advanced, it must be clearly shown that the purposes for which it is advanced are entitled to a lien. If advanced for the purpose of paying seamen's wages, necessary supplies and repairs, or anything else to which a lien in admiralty attaches, in that case a lien also attaches to such money, but not otherwise.

Now let us see what are the facts in this case so far as the borrowed money is concerned. With but one exception, and that is the loan made by Mr. Menge, of New Orleans, the money was obtained for what Capt. Miller calls "the general purposes of the boat," and he is careful to say that such general purposes include supplies, repairs, interest, take-up notes, etc. Now, some of these purposes have a lien attached to them and some have not, and if it could be definitely shown what portion of each loan was borrowed for such purposes as have liens, then the court would place such portions on the same footing with supplies. *The Grapeshot*, 9 Wall. 144. The testimony, however, shows very clearly that this cannot be done. In the case of Menge's loan, however, notwithstanding one or two general expressions on Capt. Miller's part, I am inclined to think that the advance of $1,000 was made for the express purpose of paying the running expenses of the boat, strictly so called, and therefore decide that a lien attaches to that loan.

Upon the disputed questions which the order of payment determines,

they first arise upon the question whether the claims for insurance should be included as one of the contracts of a maritime character for which state law gives a lien. That the contract of insurance is a maritime contract is settled by the decision of the supreme court in the case of *Ins. Co.* v. *Dunham*, 11 Wall. 1.

2. Whether the claim for materials and labor in the building of a boat is a maritime contract. That such a claim is not a maritime contract is also settled by the decision of the supreme court in *Edwards* v. *Elliot*, 21 Wall. 532, and the authorities there cited.

3. The mortgage must be postponed to the lien given by the general admiralty law for supplies and repairs. *The Emily Souder*, 17 Wall. 666. Now, if the lien created by the statute of the state for these claims, when furnished in the home port, is of equal dignity with liens given by the general admiralty law, it follows that the mortgage must be postponed to them also. Aside from this reasoning the weight of authority would seem in favor of the priority of liens for home supplies to that of a mortgage. *The William T. Graves*, 8 Ben. 568; *The Favorite*, 3 Sawy. 405; *The St. Joseph*, Brown, Adm. 202; *The Bradish Johnson*, 10 Chi. Leg. N. 353; *The Kiarsage*, 2 Cur. 421; *The Granite State*, 1 Spr. 277.

4. The mortgage must be postponed to the lien given by the state statute for materials and labor in the building of the boat. This lien existed when the mortgage was given, and the latter must therefore be subject to it. *Jones* v. *The Commerce*, 14 Ohio, 409; *Provost* v. *Wilcox*, 17 Ohio, 359; *Johnson* v. *Ward*, 27 Ohio St. 520; *Steamer Monarch* v. *Marine Ry. Co.* 7 Ohio St. 478.

5. The mortgage not being an admiralty contract, nor having an admiralty lien, can only be treated as a legal lien. *Bogart* v. *Steamboat John Jay*, 17 How. 399; *The Emily Souder*, 17 Wall. 666; *The Lottawanna*, 21 Wall. 558.

6. The claim on the part of the owner of the boat for an allowance of $500 in lieu of a homestead cannot prevail against liens which exist by virtue of the general admiralty law, nor against those created by the state statute. *Johnson* v. *Ward*, 27 Ohio St. 520.

7. The lien given by section 5880 of the Laws of Ohio is a lien created by the express terms of the statute, and requires for its perfection none of the proceedings as provided for in the mechanics' lien law of the state. *Johnson* v. *Ward*, *supra*.

8. In reply to the proposition that as the state statute, which creates liens, makes no distinction between liens upon contracts which

are admiralty and maritime in their nature and subject-matter, and those which are not, therefore we, in taking jurisdiction of them, cannot do so, we have this to say: Our jurisdiction, by the constitution and laws of congress, extends to those cases only which are maritime in their character, and it is not in the power of a state legislature to enlarge this jurisdiction. The proceeding in this case is a proceeding *in rem* in admiralty, and by the twelfth rule the right to such proceeding or process is limited to "material-men, for supplies or repairs, or other necessaries;" and we can enforce in this court such state liens only as are given upon contracts which are maritime in their nature and subject-matter.* Besides, we are not disposed to extend the decision of the circuit judge so as to include liens by state statutes upon contracts which are non-maritime in their character. *The Lottawanna*, 21 Wall. 558.

9. As already referred to at the commencement of this decision, by the general admiralty law a lien exists in favor of one who advances money for the payment of supplies and repairs. *The Grapeshot*, 9 Wall. 130; *The Lulu*, 10 Wall. 192; *The Emily Souder*, 17 Wall. 666; *Ins. Co.* v. *Baring*, 20 Wall. 159. If the evidence in this case reasonably satisfied my mind that the claims for money in this case, in the foreign and home ports, were advances made for the payment of supplies and repairs, I would certainly declare a lien in favor of such advances, or, if it were shown that any definite part of it was for that purpose, then a lien would be declared to the extent of such part. *The Grapeshot*, 9 Wall. 129. But, in my opinion, after a careful examination, the testimony fails to show that any definite portion of the money loaned was advanced for the payment of supplies and repairs. None of those who loaned money in the home port have been examined as witnesses, and the only testimony we have upon their claims is that of Capt. Miller.

Without entering into a further discussion of the principles involved in this case, or of the rules as established by the courts of admiralty, we will merely state, in conclusion, the classes into which the claims should be divided in the order of their priority of rank:

(1) Seamen's wages. (2) All claims which by the general admiralty law have a lien, as for supplies (including fuel) and repairs in a foreign port. (3) Such claims as are maritime in their nature and subject-matter, for which the state law has given a lien, including supplies, repairs, and insurance. These having, by the decision of the circuit judge of this circuit in the case of *The General Burnside*, 3 FED. REP. 232, been held to be of equal dignity

---

*See *The Schooner Marion*, 1 Story, 73; *Read* v. *Hull of New Brig.* Id. 246; *The Ship Norway*, 3 Ben. 165.—[REP.

with liens created by the general admiralty law, must be treated as composing a part of the second class of claims. (4) Claims for materials and labor in the building of the boat. (5) Mortgage claims. (6) Claims for borrowed money for those purposes to which no liens attach in admiralty.