# THE AINA.[1]

## BOYESEN *et al. v.* THE AINA.

### *(District Court, E. D. New York.* September 20, 1889.)

**1. MARITIME LIENS—PRIORITY—ADVANCES.**
   The lien of shipping merchants for advances made in attending to the business of a vessel at the end of her voyage takes precedence of the lien of a bottomry lender.

**2. SAME.**
   A lien on the ship exists for advances made for the purpose of paying the following charges, viz.: Hospital charges for attending the sick of the crew while the vessel is in port; surveys to ascertain the ship's condition; expenses of cabling owners; consulage; and services attending the entry of the vessel at the custom-house.

**3. SAME—RIGHTS OF JUNIOR LIENOR—PRACTICE.**
   After a lienor has obtained an interlocutory decree against a vessel by default, it is not open to a second lienor to contest the first lien. The only question open is the question of priority.

In Admiralty. On application to determine the priority of liens.
*Butler, Stillman & Hubbard, (Edward Kent,)* for libelants.
*Biddle & Ward, (Charles M. Hough,)* for holders of bottomry bond.

BENEDICT, J. This action was brought by shipping and commission merchants to recover of the brig Aina the amount of certain advances made by them under the following circumstances: The Aina was a foreign vessel, which put into the port of New York in distress. Her master having died on the passage, the mate was in charge in his place. Upon arrival, she was surveyed, and found to be leaking and to require repairs, to do which it was necessary to land the cargo. After the cargo was landed, she was again surveyed, and found to be unworthy of repair, and she was condemned by the port-wardens. Upon the arrival of the vessel in New York, the master, being without funds to defray the ship's expenses, placed her in the hands of the libelants, with a request that they advance any sums that might be necessary for the ship. The libelants accordingly attended to the business of the vessel, and made certain advances. When the result of the survey showed the vessel was not to be repaired, the vessel was libeled by her crew, and the libelants filed a libel against her to recover the amount of their advances. Another action was also commenced against her by the holders of a bottomry bond. No one appearing on behalf of the vessel, the libelants obtained, by default, an interlocutory decree condemning the vessel to be sold by the marshal, and directing a reference to ascertain the amount due them. The proceeds of the sale amounted to the sum of $2,000, out of which has been paid $87.40 for the crew and costs. The amount reported by the commissioner as due the libelants is $1,260.48. In this state of the case, it was brought before the court upon

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

an application in behalf of the libelants to determine the question of priority between the claim of the libelants and the claim of the bottomry holder. Upon the hearing, however, the question of priority was not argued, but only the question of lien; and the court was asked by the bottomry holder to reduce the claim of the libelants by striking from the libelants' bill certain items, upon the ground that advances to pay such items do not subject the vessel to a lien. This method of obtaining an adjudication on the right of the libelants to recover their demand is irregular. After the interlocutory decree in favor of the libelants by default, it was not open to any person to contest the question of lien. After the entry of the interlocutory decree in favor of the libelant, the only question open to the holders of the bottomry bond was the question of priority, and upon that question there is no dispute. The libelants' demand, of course, takes precedence over the bottomry bond. Notwithstanding the irregular method in which the question of lien has been presented,—a method which is not approved,—inasmuch as the question has been argued by both sides, it will be disposed of now, to save the parties further trouble and expense.

The first question is whether the libelants have a lien upon the vessel for seven dollars paid by them to the Long Island College Hospital. The proof as to this item is that it was a charge made by the hospital for attending to sick of the crew while the vessel was here in port. Upon this evidence, it must be found that the item constituted a lien upon the ship. Caring for the crew is a necessary expense of the ship, for which the ship herself is chargeable.

The next question is whether the item of $102.50, being sums paid the persons who made the surveys upon the vessel to ascertain her condition after her arrival in New York, is a lien. No question arises as to the reasonableness of the charges of the surveyors or as to the propriety of holding the surveys. The usage of maritime nations requires such surveys to be held. They are strictly in the interests of the vessel. Upon their result depends the question of whether the vessel is to be condemned, or to continue her voyage; and I see no reason why one who, on the request of the master, holds a survey upon a ship, should not be entitled to a lien upon the ship herself for the value of his services. That being so, the libelants are entitled to recover the amount advanced by them to pay the charges made by the surveyors.

The next item objected to is the sum of $45.96, paid for the expenses of cabling to the owners respecting the affairs of the ship. It was certainly proper, under the circumstances, for the master to communicate with his owners in regard to the disposition to be made of the ship. It was equally proper for the libelants, upon the request of the master, to do the same thing. The expense incurred was for the benefit of the ship, and, it seems to me, constitutes a proper charge upon the ship herself.

Another item is $3.18 for consulage. Such an item was before the supreme court in the case of The Emily Souder, 17 Wall. 666, and was allowed.

Another item is the libelants' charge for services attending the entry of the vessel at the custom-house, $18.35, and $200 for their other services in behalf of the vessel after her arrival in this port. It was necessary that such services as the libelants rendered should be rendered by some one, and they inured to the benefit of the ship. Such services differ, as it seems to me, from services rendered in procuring a charter for the ship, in that they are compelled by the necessities of the ship herself. I think they constitute a lien. Similar charges were allowed in the case of *The Emily Souder*, above cited.