### THE WORTHINGTON.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1904.)

No. 1,040.

1. MARITIME LIENS—ADVANCE FOR LOADING VESSEL IN FOREIGN PORT.

One who advanced money in a foreign port to the owner of a vessel who was without funds, to be used in loading the vessel in that port, and under an agreement that it was furnished on the credit of the vessel, is entitled to a maritime lien therefor.

2. SAME—ESTOPPEL OF OWNER.

The owner of a vessel who was without funds and borrowed money in a foreign port on the credit of the vessel, upon his representation that it was necessary to pay for loading the vessel in that port, is estopped to deny that it was so used for the purpose of defeating the right of the lender to a lien therefor.

Appeal from the District Court of the United States for the Northern District of Illinois.

In Admiralty.

The Ashland National Bank filed its libel against the steamer Worthington, of the port of Chicago, Ill., to recover the sum of $300, advanced at the port of Ashland, Wis., for the use of the vessel. The Chamberlain Transportation Company, a corporation of the state of Illinois, the owner, intervened, and bonded the vessel. The steamer was due at the port of Ashland on May 29, 1902, where she was to take on a cargo of lumber to be transported to Chicago, or to some port in the state of New York. The owner was without funds to pay the necessary expense of loading, and by direction of the owner its secretary on that day applied to the Ashland Bank for the loan of the sum of $300 upon the credit of the vessel, stating that the money was needful for and would be used to pay the necessary cost of loading the vessel at that port. The money was thereupon loaned by the bank upon the credit of the vessel for the purpose indicated; the secretary of the owner giving to the bank a draft upon the owner at Chicago, as he was authorized by the transportation company to do, which draft was accepted, but never paid. At the hearing no evidence was offered by the libelant to show that the money so loaned was actually used to pay the expense of loading the vessel, and the offer of the owner to show that it was diverted from the purpose for which it was loaned was overruled. The court below pronounced for the libelant, and from a decree for the amount loaned an appeal is taken to this court by the owner, the Chamberlain Transportation Company.

Joseph McInerney, for appellant.

Charles E. Kremer, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts). Within the ruling of the Supreme Court of the United States in the cases of The Grapeshot, 9 Wall. 129, 19 L. Ed. 651, The Kalorama, 10 Wall. 204, 19 L. Ed. 941, and The Emily Souder, 17 Wall. 666, 21 L. Ed. 683, it

¶ 1. See Maritime Liens, vol. 34, Cent. Dig. § 18.

is clear that there was an implied hypothecation of the steamer. The vessel was due at the port of Ashland—a foreign port—to load and to continue her voyage. The owner was without funds. At the request of the owner, the libelant advanced the necessary funds for the purpose of loading the vessel, and upon the credit of the vessel. That the services of a stevedore in loading or unloading a vessel in a foreign port constitute a maritime contract for which a lien is given upon the vessel is no longer doubtful. The Canada (D. C.) 7 Fed. 119; The Hattie M. Bain (D. C.) 20 Fed. 389; The Director (D. C.) 34 Fed. 57; The Gilbert Knapp (D. C.) 37 Fed. 209; The Main, 2 C. C. A. 569, 51 Fed. 954; Norwegian Steamship Company v. Washington, 6 C. C. A. 313, 57 Fed. 224; The Hattie Thomas (D. C.) 59 Fed. 297; The Sirius (D. C.) 69 Fed. 226; Boutin v. Rudd, 27 C. C. A. 526, 82 Fed. 685. Such services constituting a maritime lien, moneys advanced to pay for them are also entitled to a maritime lien; certainly if they were in fact expended for such purpose. There is here a sufficient showing of circumstances of exigency, of the supplying of the funds upon the credit of the vessel, of the necessity for the credit, and of implied hypothecation.

It is said and it was sought to be shown that the moneys thus procured upon the credit of the vessel upon representation by the owner that they were necessary for the lading of the vessel were not in fact expended for the purpose for which they were borrowed, but were diverted to some other purpose, and it is insisted that therefore no maritime lien exists. The cases upon which this doctrine is sought to be lodged are cases of supplies furnished upon the order of the master. The authority of the master to pledge the credit of the owner or of the vessel is limited, and the one dealing with him is bound to take notice of such limitation. The master's authority so to pledge the owner's credit or the vessel in a foreign port is dependent upon necessity, and that alone, and therefore the actual receipt by the ship of supplies and repairs or the actual expenditure of money procured for the benefit of the vessel is essential to the creation of a maritime lien. But when the owner in person orders supplies for his vessel in a foreign port, and upon the credit of the vessel, he being without funds, he is estopped to say, as against one furnishing supplies or money represented by him to be necessary for the ship, that the supplies or money so procured were diverted from the purpose for which they were obtained, and were not applied to the service of the ship. The E. A. Barnard (C. C.) 2 Fed. 712, 716; The Mary Chilton (D. C.) 4 Fed. 847; The Robert Dollar (D. C.) 115 Fed. 218, 220.

In The Schooner Freeman, 18 How. 182, 15 L. Ed. 341, the applicability to the admiralty of this doctrine of estoppel is recognized. There the owner had contracted to sell, and in pursuance of such contract had delivered possession of the schooner to one Holmes. The latter gave to his son its entire control and management. The son procured the master, appointed by him, to certify to bills of lading for merchandise never delivered to the vessel. Upon libel filed by holders of the bills of lading for a valuable consideration and in good faith, it was ruled that, while the general owner was not estopped, because not a party to the transaction, the special owner was estopped to deny

that the merchandise specified in the bill of lading was shipped upon the vessel.

The Wyoming (D. C.) 36 Fed. 493, 496, is relied upon as holding to the doctrine that, to establish a lien, it must be shown that the supplies were actually used for the benefit of the ship. The facts of the case are not fully reported, but it would seem to have been a contest between various libelants and intervening petitioners of the one part and the intervening mortgagee of the vessel of the other part. The question of estoppel did not arise, and was not considered. It may well be that, while the owner might be estopped to assert that supplies secured upon his representation that they were necessary for and were to be used for the vessel were in fact not so used, the estoppel would not bind material-men who had furnished supplies that were in fact used on and for the vessel. As between them and one who had furnished supplies which were not in fact so used, a superior equity might arise in favor of the former. But that is not this case. Here are no intervening lienhold-ers. It is a contest merely as between the owner of the vessel and one supplying means for the use of the vessel in a foreign port, upon the credit of the vessel, and upon the representation of the owner, who was without means, that the advances were necessary for the use of the ship.

We hold that the owner in such case is estopped to assert that ad-vances so procured were by him diverted from the purpose for which they were obtained.

The decree will be affirmed.