## THE CIMBRIA.

### (District Court, D. New Jersey. May 12, 1914.)

1. SUBROGATION (§ 23*)—ADVANCES TO PAY LIENS—EFFECT OF TAKING MORT-GAGE.

While a mortgage on a vessel is not a maritime lien, and the holder is not entitled to share ratably with holders of such liens in the funds arising from a sale of the vessel, one who lends money to be used, and which is used, for the payment of claims secured by maritime liens, is not in the absence of laches deprived of the right to be subrogated to such a lien for the advance, which he would otherwise have, merely because he takes a mortgage or a note from the owner therefor.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23.*]

2. MARITIME LIENS (§ 44*) — ADVANCES TO PAY LIENS — PRESUMPTION THAT CREDIT WAS GIVEN TO VESSEL.

Under Act June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), which creates a presumption that the furnishing of repairs, supplies, or other necessaries to a vessel on the order of the owner, was on the credit of the vessel, the same presumption attaches to advances made to pay the claims of persons who have maritime liens for so furnishing, etc., and such presumption is not overcome by the fact that the owner's note and a mortgage on the vessel are taken for the advances.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 83; Dec. Dig. § 44.*]

In Admiralty. Suit by the Rockland County Trust Company against the steamboat Cimbria. Decree for libelant.

Conway, Williams & Kelly, of New York City, for Rockland County Trust Co.

Hyland & Zabriskie, of New York City, opposed.

RELLSTAB, District Judge. In accordance with the stipulation filed in this cause, the commissioner has reported, not only as to the amount due the libelant, but also whether it was entitled to a maritime lien against the boat.

The boat was sold pursuant to process issued on other libels and did not realize enough to pay all the claims. The commissioner found that libelant had advanced the sum of $3,418.49 to the owner of the boat and was entitled to such sum, with interest from August 22, 1913; but that the amounts found due the other libelants, for services and supplies rendered and furnished since such advances were made, were entitled to be paid first.

This subordination of the advances to the claims of the other libelants was based on the fact that libelant had taken a mortgage upon the vessel to secure such advances, and his determination that such advances "were made on the strength of the mortgage and upon the credit of the New York & Rockaway Beach Transportation Company and not upon the credit of the vessel."

Libelant insists that as to part of such advances, viz., $446, it is entitled to share with the wage libelants, and with the other holders of maritime liens as to the remainder due it.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The testimony discloses that the owner of the steamboat obtained a loan from the libelant, to be used in repairing and re-equipping the steamboat; it having been recently damaged in a collision. The loan was evidenced by a promissory note, and was made upon condition that it be secured by a mortgage on the boat, that proper insurance against fire, collision, etc., should be carried, and that the money should be advanced only as the work of repairing, etc., progressed. The mortgage was duly recorded in the register's office of the New York Customs House.

Of the amount loaned, $1,000 was paid direct to the borrower, and the remainder, $2,418.49, was paid out by the lender, upon the borrower's orders, direct to the several persons who had furnished supplies to or worked upon the steamboat; the lender taking separate receipts from such persons. The $1,000 paid direct to the borrower, according to the testimony of its president, was to be used as it saw fit, and the greater part was actually used in paying claims for which no maritime liens would lie.

[1] The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345, cited by the commissioner, is undoubtedly authority for his conclusion that:

"There can be no doubt that the libelant cannot rest on its mortgage and say that the fact that it was executed and recorded gives it either a priority or the right to share equally in the funds arising from the sale of the vessel."

The reason for this is that the libelant's mortgage is not a maritime lien. But why should the lender be deprived of the maritime lien obtained by the application of the loan to the payment of claims maritime in their nature merely because he has also taken a common-law security? It is familiar law that:

"One who lends money on request of the proper authority for the purpose of paying off maritime liens upon a vessel, and who looks to the vessel as his security, has a lien upon the vessel for such advances equal in dignity to the liens which he satisfies." 26 Cyc. 764.

[2] Since the passage of "An act relating to liens on vessels for repairs, supplies, or other necessaries," approved June 23, 1910 (chapter 373, 36 Stat. 604, U. S. Comp. St. Supp. 1911, p. 1191), which creates a presumption that the furnishing of repairs, supplies, and other necessaries to a vessel, upon the order of the owner, is upon the credit of the vessel, it follows that advances to pay any person having a maritime lien for so furnishing, etc., upon the order of the owner of a vessel, are presumed to have been made upon the credit of the vessel, as well as upon that of the owner. The Emily Souder, 84 U. S. 666, 21 L. Ed. 683; Ely v. Murray & Tregurtha Co., 200 Fed. 368, 118 C. C. A. 520.

The contention that the making of a promissory note, at the time of this loan, and the mortgage upon the vessel to secure its payment, evidence an intent not to give credit to the vessel, in my judgment, lacks virility. That the taking of the promissory note evidenced an intent to hold the owners of the boat responsible is manifest, but not any more than the taking of a mortgage upon the vessel is evidence that

the advances secured by such mortgage were also made upon the credit of the vessel.

To admit so much of the advances as paid wages to the status of a wage claim, and the remainder of the advances, directly made by the lender to materialmen and furnishers in payment of their claims for materials and supplies, to the status of the claims of those furnishing repairs, supplies, and other necessaries, in the absence of laches works no harm to the other libelants, be their claims for wages or supplies, as without the payment of such claims they would have continued to be maritime liens, and entitled to share in the proceeds of sale with the other maritime liens, according to their rank. Neither the Rumbell Case, nor any other called to the attention of the court, is opposed to permitting a claim thus bottomed to so prorate when the proceeds are insufficient to pay all claims in full.

In the Rumbell Case, the mortgage considered was given to secure a part of the purchase money upon the sale of the mortgaged vessel, and neither it, nor the indebtedness thus secured, was enforceable as a maritime lien. The facts of that case did not require a decision involving the status of every kind of debt that might be secured by a mortgage, and there is nothing in the opinion that suggests that a maritime claim, secured by a mortgage on the vessel charged with its payment, ipso facto loses its character as such upon the acceptance of the mortgage. On the contrary, the opinion carefully avoids any such intimation. The relation of a purchase-money mortgage to subsequent contracts, admittedly maritime, was the subject then calling for decision, and the deductions drawn from the cases there cited were limited to mortgages of that character and those given to raise money for general purposes. 148 U. S. 1, 15, 13 Sup. Ct. 498, 37 L. Ed. 345.

The reason for such a limitation is obvious. In the case of the purchase-money mortgage, the mortgagee has but changed his relation to the vessel from absolute to conditional ownership. As compared with those who have rendered service to the vessel or furnished it with supplies, he occupies the same position as the absolute owner. Not so, however, is the relation of a stranger to the title who, on the request of the owner, advances money to pay for such service and supplies. He occupies the position of those who have rendered such service, etc., and in their stead obtains a lien paramount to that of the owner or any one in privity with his title. In the case of the mortgage to secure advances made to the owner of the vessel generally, no subrogation of any specific maritime lien having taken place, the holder is confined to his mortgage—a common-law lien.

The present case furnishes an apt illustration of the doctrine here considered. The $1,000 advanced, though a part of the debt secured by the mortgage was not directly applied to the payment of liens maritime. It was turned over to the borrower to use generally, and, as noted, the greater part was actually used in the payment of nonmaritime liens. That it might have been used by the owner in the payment of indebtedness that otherwise might constitute a maritime lien, and that a part may actually have been so used, is not controlling. In the case of advances, the tacit hypothecation obtained by operation of law

depends upon their having taken the place specifically of service and supplies directly rendered or furnished. Where the proof fails to show such direct and specific application, the lender is left to such security as his express contract gives him. As to the remainder of the advances, the evidence clearly establishes, not only a purpose to have them applied to the payment of such service and supplies, but that they were specifically applied thereto.

The St. Mary, 21 Fed. Cas. 215, No. 12,242, is authority for the proposition that the court should "lay out of view the mortgage given upon the vessel, and put the decision upon the original indebtedness"; and The A. R. Dunlap, 1 Fed. Cas. 1095, No. 513, holds that the taking of a mortgage as collateral security by persons furnishing supplies does not prevent their enforcing the lien given by the maritime law. The St. Joseph, 21 Fed. Cas. 174, No. 12,229, is a case to the same effect.

In the present case there is no contention that the libelant unduly delayed in asserting its maritime lien, and as the evidence shows that, of the amount found due the libelant, the sum of $2,418.49 was paid directly to persons who then had maritime liens enforceable for that amount against the vessel in question, libelant has a maritime lien for such sum, and as, of this amount, the sum of $446 was paid to seamen, it is entitled, as to such sum, to the same preference as the wage libelants.

As to the remaining $1,000 paid directly to the owners of the boat, the libelant is not entitled to a maritime lien. 26 Cyc 765. The conclusions reached by the commissioner in this behalf are disapproved, and the libelant may enter a decree in accordance with this opinion.